IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK EDWARD SPITZBARTH,     *

                Plaintiff,            *

             vs.                  *         Civil Action No. ADC-17-2934

COMMISSIONER, SOCIAL SECURITY   *
ADMINISTRATION,[1]               *

             Defendant.         *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On October 4, 2017, Mark Edward Spitzbarth ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 13, 16), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED.

### PROCEDURAL HISTORY

On May 9, 2014, Plaintiff filed a Title XVI application for SSI, alleging disability beginning on November 9, 2013. His claim was denied initially and upon reconsideration on December 2, 2014 and May 27, 2015, respectively. Subsequently, on June 2, 2015, Plaintiff filed a written request for a hearing and, on September 19, 2016, an Administrative Law Judge

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

("ALJ") presided over a video hearing. On October 14, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], since May 9, 2014, the date the application was filed." ECF No. 10 at 46. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on August 14, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On October 4, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability application. On April 18, 2018, Plaintiff filed a Motion for Summary Judgment, and on August 6, 2018, after receiving an extension of time for filing, Defendant filed a Motion for Summary Judgment.[2] This matter is now fully briefed and the Court has reviewed both parties' motions.

STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-

---

[2] On September 7, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

4

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by

5

solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since May 9, 2014, the application

6

date." ECF No. 10 at 33. At step two, the ALJ found that Plaintiff had the severe impairments of "diffuse degenerative disc disease, left ankle bone spur, hypertension, mood disorder not otherwise specified (NOS), bipolar disorder, anxiety disorder, panic disorder, agoraphobia, posttraumatic stress disorder (PTSD), attention deficit disorder, and personality disorder." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 34. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 416.967(b). [Plaintiff] can frequently balance. He can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs. He may not climb ladders, ropes, or scaffolds and should avoid workplace hazards such as unprotected heights and dangerous, moving machinery. He should avoid concentrated exposure to extreme cold. [Plaintiff] is limited to understanding, remembering, and carrying out simple tasks. There should be no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the other). Changes should be easily explained and no more than occasional. He can have no contact with the public, but can have occasional interactions with coworkers and supervisors.

*Id.* at 38. Based on the resulting RFC, the ALJ then determined that Plaintiff was "unable to perform any past relevant work." *Id.* at 44. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 45.

DISCUSSION

Plaintiff raises four allegations of error on appeal: (1) that the ALJ failed to fully explain her decision with respect to the weight she gave to medical professionals;[3] (2) that the ALJ improperly determined that Plaintiff's IQ score was not a severe impairment; (3) that the ALJ failed to give the opinion of Plaintiff's treating physician controlling weight without presenting substantial contrary evidence; and (4) that substantial evidence did not support the ALJ's RFC determination. Each of Plaintiff's arguments lack merit and are addressed below.

## A. The ALJ Properly Conducted Herself During Step Four Of Her Sequential Evaluation.

Several of Plaintiff's allegations relate to the ALJ's assessment of the medical opinion evidence during step four of the sequential evaluation, and we will discuss them before addressing the ALJ's RFC determination, which Plaintiff also asserts is erroneous.

> 1. The ALJ properly evaluated the medical opinion evidence and sufficiently explained her decision as to weight given.

Section 416.927 of the regulations governs an ALJ's consideration of the medical opinion given by a medical source. *See* 20 C.F.R. § 416.927. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including . . . what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). The regulations further provide that a medical source's statement about what a claimant can still do despite his or her impairment should be based on the acceptable medical source's findings

---

[3] Within this argument, Plaintiff raises three bases upon which the ALJ allegedly erred: (1) that "[t]he ALJ ignored statements by the state agency medical consultants stating that [Plaintiff] is 'incapable of sustaining a 40-hour work-week'"; (2) that "[t]he ALJ is inconsistent in giving weight to other opinion evidence in the record"; and (3) that "[t]he ALJ improperly use[d] the 'sit and squirm' index to discount [Plaintiff]'s mental evaluation." ECF No. 13-1 at 15–17.

8

that are supported by a combination of medical history, clinical findings, laboratory findings, diagnoses, and prognoses. *See* 20 C.F.R. § 416.913(a)(3).

Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times and long enough to have obtained a longitudinal picture of [the patient's] impairment, we will give the medical source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. 404.1527(c)(2), 416.927(c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 416.927(d)(1).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give to any medical opinion received: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to

9

the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011).

*Opinion of Dr. Sabar, Plaintiff's Primary Care Physician*

Plaintiff argues that the ALJ failed to appropriately consider the regulatory factors for determining how much weight to give the opinion of Dr. Gurpreet Sabar, Plaintiff's primary care physician. ECF No. 13-1 at 18–20.

After reviewing Dr. Sabar's records with regard to Plaintiff, the ALJ assigned some weight to Dr. Sabar's opinion, articulating her reasoning as follows:

> [Plaintiff]'s primary care physician, Gurpreet Sabar, M.D., opined in July 2015 [Plaintiff] is able to frequently lift 15 pounds and occasionally lift 20 pounds, does not require a cane, and can stand and walk for one hour at a time for a total of two hours per day. He further opined [Plaintiff]'s sitting is not affected. Moreover, Dr. Sabar opined [Plaintiff] could frequently balance and occasionally climb, stoop, crouch, kneel, and crawl. Dr. Sabar opined [Plaintiff] could occasionally reach, handle, feel, push, and pull. Finally, Dr. Sabar opined [Plaintiff] should be restricted from moving machinery and temperature extreme. Dr. Sabar is a treating source with a longitudinal treatment history with [Plaintiff]. However, portions of this opinion appear too extreme to be supported by the evidence, as most of Dr. Sabar's physical examination findings of [Plaintiff] have been mild. For example, in October 2015, just a few months after this opinion was formulated, Dr. Sabar's examination of [Plaintiff] was unremarkable except for cervical and lumbar spine tenderness and limited range of motion in the neck and hip. Therefore, this opinion is given some weight.

ECF No. 10 at 42 (internal record citations omitted).

The Court disagrees with Plaintiff and finds that the ALJ satisfied her burden to produce substantial evidence contradicting Dr. Sabar's opinion by drawing on the physician's own examination findings. *See id.* Contrary to Plaintiff's assertion that the ALJ erred by failing to consider the factors laid out in 20 C.F.R. § 416.927(c) when determining how much weight to

10

assign to Dr. Sabar's medical opinion, the ALJ was under no obligation to specifically enumerate each of the six factors described in the regulations; the regulations require only that "good reasons" be provided for the weight given to a treating physician's opinion. *See* 20 C.F.R. § 416.927(c)(2); *see also Burch v. Apfel*, 9 F.App'x 255, 259 (4th Cir. 2001) (finding no error in an ALJ's decision to accord "little weight" to a treating physician's testimony where the ALJ considered "all the pertinent [regulatory] factors" without reciting each factor). Here, the ALJ specifically explained the inconsistency between Dr. Sabar's opinion and his own examination findings, noting that the opinion was "too extreme" in light of the examination findings, the majority of which were "mild." ECF No. 10 at 42. Furthermore, contrary to Plaintiff's assertion that the ALJ did not articulate which parts of Dr. Sabar's opinion she gave weight to, the RFC clearly indicates which portions of Dr. Sabar's opinion were credited, including the findings that Plaintiff can frequently balance and occasionally stoop, kneel, crouch, and climb. *See id.* at 38. Consequently, the Court finds that the ALJ's reasoning for giving Dr. Sabar's opinion some weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

### *Opinions of Dr. Colley and Dr. Taller, Consultative Examiners*[4]

Plaintiff also argues that the ALJ was "inconsistent in giving weight to other opinion evidence in the record." ECF No. 13-1 at 15. Specifically, Plaintiff takes issue with the ALJ's evaluation of testimony from two consultative examiners, Dr. Colley and Dr. Taller. *Id.* at 15–16.

---

[4] "A consultative examination is a physical or mental examination or test purchased for [the claimant] at [the SSA's] request and expense from a treating source or another medical source . . . ." 20 C.F.R. §§ 404.1519, 416.919. The SSA "will purchase a consultative examination only from a qualified medical source[,]" which "may be [the claimant's] own medical source or another medical source." 20 C.F.R. §§ 404.1519g(a), 416.919g(a).

With regard to Dr. Colley, Plaintiff asserts that the ALJ "ignor[ed] a statement . . . that [Plaintiff] can only lift 10 pounds" and erred in finding that it is "unclear whether this is an actual opinion or just observation of [Plaintiff] during the examination." *Id.* at 15 (quoting ECF No. 10 at 42) (internal quotation marks omitted). Citing section 416.919p(b) of the regulations, Plaintiff contends that "[i]f there is ambiguity in a report of the CE[,] it is for the agency to clear this up." *Id.*

After reviewing Dr. Colley's records with regard to Plaintiff, the ALJ assigned some weight to her opinion, articulating her reasoning as follows:

> Consultative examiner Dr. Colley opined in November 2014 [Plaintiff] is able to sit, stand, and go from supine to prone and back to standing independently with grimaced with pain [sic]. Moreover, Dr. Colley opined [Plaintiff] is able to lift ten pounds, bend forward to pick up a light stool, partially squat, carry light objects, and go up and down stairs independently but using a step to pattern. It is unclear whether this is an actual opinion or just observations of [Plaintiff] during the examination. Still, this opinion is supported by findings of painful range of motion, tenderness, and some decreased strength. Therefore, this opinion is given some weight.

ECF No. 10 at 42 (internal record citations omitted).

Section 416.919p(b) of the regulations states: "If the report is inadequate or incomplete, [the SSA] will contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 416.919p(b). Thus, according to this regulation, an ALJ is "required to re-contact medical sources only when the evidence before him is inadequate to determine whether the [c]laimant is disabled." *Farnsworth v. Astrue*, 604 F.Supp.2d 828, 857 (N.D.W.Va. 2009) (finding no need to re-contact the consultative examiner

where he failed to note the claimant's degree of limitation, but his objective findings showed no limitations).

Here, contrary to Plaintiff's assertion that the ambiguity was for the agency to clear up, the ALJ was not required to re-contact Dr. Colley because his report was neither inadequate nor incomplete. Despite the ambiguity surrounding whether Dr. Colley's opinion that Plaintiff is able to lift ten pounds is an actual opinion or an observation, the ALJ noted that "[s]till, this opinion is supported by findings of painful range of motion, tenderness, and some decreased strength." ECF No. 10 at 42. Therefore, as in *Farnsworth*, other objective findings supported Dr. Colley's opinion. Consequently, the Court finds that the ALJ's reasoning for giving Dr. Colley's opinion some weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

With regard to Dr. Taller, Plaintiff argues that it was inconsistent for the ALJ to give great weight to Dr. Taller's opinion because it "does not include any objective medical testing, an opinion, or a [RFC]." ECF No. 13-1 at 16. According to Plaintiff, "[i]t seems a double standard to speculate that Dr. Colley's statement limiting [Plaintiff] to lifting 10 pounds is an unclear opinion when Dr. Taller is even more ambiguous." *Id.*

After reviewing Dr. Taller's records with regards to Plaintiff, the ALJ assigned great weight to his opinion, articulating her reasoning as follows:

> Psychological consultative examiner Dr. Taller opined in September 2014 that [Plaintiff] is able to understand and follow simple instructions independently. This opinion is supported by Dr. Taller's findings upon examination, including [Plaintiff]'s score of 28/30 on the mini-mental status examination, which is in the normal range. Therefore, this opinion is given great weight.

ECF No. 10 at 43 (internal record citations omitted).

13

As noted above, when determining the weight given to a medical opinion, the ALJ must consider a multitude of factors, including the consistency of the opinion with the record as a whole and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(4), (6). Here, contrary to Plaintiff's assertion that Dr. Taller's opinion did not include any objective medical testing and the like, the ALJ stated that the opinion was supported by Plaintiff's mini-mental status examination score of 28/30, which is in the normal range. ECF No. 10 at 43. Mini-mental status examination findings and a consultative examiner's opinion stemming from those findings are sufficient for an ALJ to rely upon in determining weight. *See Johnson v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-67, 2016 WL 6839370, at *2 (D.Md. Nov. 21, 2016) (finding error where the ALJ discounted the mini-mental status examination findings of the consultative examiners without contrary evidence). In addition to the mini-mental status examination findings, Dr. Taller's opinion was further supported by his own examination findings. ECF No. 10 at 43. Consequently, the Court finds that the ALJ's reasoning for giving Dr. Taller's opinion great weight was not inconsistent, but rather was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

### Opinion of Dr. Ansel, Examining Psychologist

Plaintiff's next argument implicates portions of the ALJ's assessment at steps three and four of the sequential evaluation. Plaintiff essentially contends that the ALJ improperly discounted the opinion of Dr. Edward Ansel, a psychologist Plaintiff was referred to by his representative, and instead relied on her own observations of Plaintiff from the hearing. ECF No. 13-1 at 16–17.

During step three of the sequential evaluation, the ALJ found that "[t]he severity of [Plaintiff]'s mental impairments, considered singly and in combination, do not meet or medically

14

equal the criteria of [L]istings 12.04 [(depressive, bipolar, and related disorders)], 12.05 [(intellectual disorder)], and 12.06 [(anxiety and obsessive-compulsive disorders)]." ECF No. 10 at 35. To make this finding, the ALJ considered the impairment-related "paragraph B" criteria ("paragraph D" criteria of Listing 12.05) required for mental disorders, which includes consideration of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. When analyzing the social functioning and concentration, persistence, and pace areas, the ALJ stated:

> In social functioning, [Plaintiff] has moderate difficulties. [Plaintiff] reported he has issues getting along with people and becomes easily frustrated, agitated, and angry around others. He further reported he spends time with his mother. [Plaintiff] reported problems getting along with others because he loses his temper easily and becomes threatening and violent. Additionally, [Plaintiff] reported losing a job due to a disagreement with a coworker. He reported to a consultative examiner he feels uncomfortable around people and does not get along with others. He has reported he has no friends. However, the undersigned observed him interact in a socially appropriate manner during the hearing. Overall, the undersigned finds [Plaintiff] more limited than the State psychological consultants found. Accordingly, the undersigned finds [Plaintiff] has moderate difficulties in this functional domain.
>
> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. [Plaintiff] reported he needs reminders to care for personal needs and to take medications, but that he uses post-it notes and calendars to remind himself. He further reported he watches television daily but loses focus and concentration easily. Moreover, [Plaintiff] reported he can pay attention only 10-to-15 minutes. He also reported he does not follow written or spoken instructions well. [Plaintiff] reported unstable concentration and memory to a consultative examiner. However, during one examination, [Plaintiff] was able to give a fairly detailed history without any interruption in processing speed. Moreover, he did not appear to have any difficulty recalling information in his hearing testimony. Thus, the undersigned finds [Plaintiff] more limited than the State psychological consultants

15

> found. Based upon the totality of the evidence, [Plaintiff] is found
> to have moderate difficulties maintaining concentration,
> persistence, and pace.

ECF No. 10 at 36 (internal record citations omitted).

During step four of the sequential evaluation, after reviewing Dr. Ansel's records with

regard to Plaintiff, the ALJ assigned little weight to his opinion, articulating her reasoning as

follows:

> Dr. Ansel opined in September 2016 that [Plaintiff] is incapable of
> conforming his behavior to meet the demands of substantial
> gainful employment. Moreover, Dr. Ansel opined [Plaintiff] has
> marked limitations in making occupational adjustments, making
> performance adjustments, and making personal-social adjustments.
> Although an examining source, Dr. Ansel is not a treating source.
> Moreover, the final issue of disability is one reserved to the
> Commissioner. Furthermore, less weight is accorded to this
> opinion because it was not formulated in the course of seeking
> treatment, but rather by provider suggested by [Plaintiff]'s
> representative. Moreover, in examining the "paragraph B" criteria,
> discussed above, there is no indication [Plaintiff] is markedly
> limited in all these categories. For example, [Plaintiff] spends time
> with his mother and the undersigned observed him interact in a
> socially appropriate manner during the hearing. Furthermore,
> [Plaintiff] is able to set reminders to take medication, and during
> an examination, gave a fairly detailed history without any
> interruption in processing speed. Additionally, this opinion is not
> consistent with [Plaintiff]'s repeatedly normal mini-mental status
> examinations. Therefore, this opinion is given little weight.

*Id.* at 43 (internal record citations omitted).

Citing *Wander v. Schweiker*, 523 F.Supp. 1086 (D.Md. 1981), Plaintiff argues that the

ALJ impermissibly used her observations of Plaintiff during the hearing to discount Plaintiff's

and Dr. Ansel's testimony. ECF No. 13-1 at 16–17. The Court disagrees.

"While a claimant's demeanor at a hearing can be considered by the ALJ in evaluating

credibility and subjective complaints of pain, it is inappropriate for the ALJ to judge a claimant

by reference to some '[s]it and [s]quirm' index." *Wander*, 523 F.Supp. at 1094 (citations

omitted). Here, the ALJ did not use an impermissible "sit and squirm index." Rather, the ALJ considered a multitude of other evidence, including Plaintiff's own testimony and the mini mental-status examination findings, in addition to her own observations from the hearing to explain why Dr. Ansel's opinion was given little weight. Specifically, the ALJ first noted that Dr. Ansel was not a treating source. ECF No. 10 at 43. As discussed *supra*, any medical opinion that is not a treating source's medical opinion is considered using the six regulatory factors listed in section 416.927(c) of the regulations, including treatment relationship and consistency with the record. 20 C.F.R. § 416.927(c)(2), (4). In her analysis, the ALJ addressed several of those factors when she explained that Dr. Ansel's opinion was discounted because "it was not formulated in the course of seeking treatment, but rather by provider suggested by [Plaintiff]'s representative." ECF No. 10 at 43. Additionally, in accordance with the factors, the ALJ noted that Dr. Ansel's opinion was not only inconsistent with Plaintiff's mini-mental status examinations, but that it was inconsistent with notes from an examination stating that Plaintiff was able to give detailed information without any interruption. *Id.* Thus, the ALJ properly weighed the testimony of Dr. Ansel's opinion using the section 416.927(c) factors and did not improperly conduct a "sit and squirm" test. Consequently, the Court finds that the ALJ's reasoning for giving Dr. Ansel's opinion little weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

*Opinions of Dr. Force and Dr. Hakkarinen, State Agency Medical Consultants*

Lastly, Plaintiff argues that the ALJ's decision to give the opinion of the two state agency medical consultants some weight was erroneous. ECF No. 13-1 at 15. Specifically, Plaintiff contends that the ALJ erred in "ignor[ing] statements by the state agency medical consultants

17

stating that [Plaintiff] is 'incapable of sustaining a 40-hour work-week.'" *Id.* (quoting ECF No. 10 at 93, 105).

After reviewing the disability determination assessments from the state agency medical consultants at the initial level and the reconsideration level, the ALJ assigned some weight to the opinions, articulating her reasoning as follows:

> The State medical consultants at the initial level, J. Force, M.D., and at the reconsideration level, W. Hakkarinen, M.D., opined [Plaintiff] is able to perform light work, occasionally balance and stoop, and frequently kneel. This opinion was formulated prior to receipt of evidence received at the hearing level. Such evidence includes findings of restricted range of motion, and paralumbar tenderness. Moreover, considering the medical source statement from Dr. Sabar, the undersigned finds [Plaintiff] further limited. Furthermore, [Plaintiff] reported worsening symptoms in cold weather, which supports limiting his exposure to extreme cold. Therefore, this opinion is given some weight.

ECF No. 10 at 43 (internal record citations omitted).

Contrary to Plaintiff's assertion that the ALJ "has failed in her duty to explain the opinion by failing to address the conclusion by the agency medical consultants," ECF No. 13-1 at 15, the ALJ was under no obligation to specifically refer to that particular evidence. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." (internal citation and quotation marks omitted)); *Hammond v. Comm'r, Soc. Sec. Admin.*, No. SAG-13-1742, 2014 WL 711022, at *3 (D.Md. Feb. 21, 2014) ("[A]n ALJ is not required to address every piece of evidence in the record, so long as a reviewing court can determine from the opinion 'what the ALJ did and why he did it.'" (citations omitted)). Here,

18

the ALJ specifically explained that the opinions of Dr. Force and Dr. Hakkarinen were "formulated prior to receipt of evidence received at the hearing level," and that, after considering the additional evidence presented at the hearing level and Plaintiff's primary care physician's statement, she "f[ound Plaintiff] further limited" than the state agency medical consultants did. ECF No. 10 at 43. In her explanation, the ALJ makes clear that she evaluated the consistency of the state medical consultants' opinions with all of the evidence in the record in determining the weight to be given. Consequently, the Court finds that the ALJ's reasoning for giving the state agency medical consultants' opinion some weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record.

2. The ALJ properly assessed Plaintiff's RFC.

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c). Plaintiff argues that the ALJ, in determining Plaintiff's RFC, "failed to explain the opinion of the state agency medical consultants, used her own observations of [Plaintiff] . . . to discount medical evidence, failed to adequately explain the weight she gave consultative examiners, failed to give controlling weight to [Plaintiff]'s treating physician, and ignored a valid IQ test of 65." ECF No. 13-1 at 20. With the exception of the argument relating to the IQ score, which we will turn to next, this argument appears to be a re-characterization of Plaintiff's previous contentions, which have been addressed in the preceding discussions. Accordingly, for the reasons stated in the preceding discussions, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

## B. The ALJ Properly Evaluated Plaintiff's IQ Score As A Non-Severe Impairment.

Plaintiff's final argument relates to the ALJ's analysis at step two of the sequential evaluation. Specifically, Plaintiff contends that the ALJ erred in finding that Plaintiff's IQ score was not a severe impairment. ECF No. 13-1 at 17–18.

At step two of the sequential evaluation, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is considered "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). During step two, "[i]f the [ALJ] finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps." *Rivera v. Astrue*, No. CBD-12-1095, 2013 WL 4507081, at *7 (D.Md. Aug. 22, 2013) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). "However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of RFC." *Id.* (emphasis in original). "If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant." *Id.* (citing *Thomas v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-3587, 2013 WL 210626, at *2 (D.Md. Jan. 17, 2013) (finding harmless error where the ALJ continued with sequential evaluation process and considered both severe and non-severe impairments)).

In her step two analysis, the ALJ found the following severe impairments: "diffuse degenerative disc disease, left ankle bone spur, hypertension, mood disorder not otherwise specified (NOS), bipolar disorder, anxiety disorder, panic disorder, agoraphobia, posttraumatic stress disorder (PTSD), attention deficit disorder, and personality disorder." ECF No. 10 at 33. The ALJ also explained why Plaintiff's low IQ score was not found to be a severe impairment:

"Although [Plaintiff] received a low IQ score, there is no mental diagnosis related to this score. Therefore, this is non-medically determinable, but it is nonetheless considered throughout this decision, including in discussing the Listings of Impairments." *Id.* at 34 (internal record citations omitted).

At step three, when considering the severity of Plaintiff's mental impairments, the ALJ considered Listing 12.05, the Listing for intellectual disorders.[5] *Id.* at 35, 37. In determining that Plaintiff did not meet Listing 12.05, the ALJ discussed Plaintiff's IQ score:

> Turning back to [L]isting 12.05, the requirements of this [L]isting are not met because there is no evidence of a learning disability during [Plaintiff]'s developmental period. [Plaintiff] received a full-scale IQ score of 65 in September 2016, in the extremely low range of intelligence and at the first percentile. However, there was no indication this has been the case since the developmental period, as he was able to use his GED despite only eight years of education. Rather, it was felt there was significant deterioration of intellectual functioning because of closed head injuries. Thus, because the record shows no evidence of a learning disability during the developmental period, [L]isting 12.05 is not met or medically equaled.

*Id.* at 37 (internal record citations omitted). And at step four, the ALJ again explicitly considered Plaintiff's IQ score when discussing Dr. Ansel's opinion: "[Plaintiff] received a full-scale IQ score of 65, in the extremely low range of intelligence. However, Dr. Ansel noted there is no indication this has been the case since the developmental period, as [Plaintiff] was able to obtain his GED despite only eight years of education." *Id.* at 41.

Here, although the ALJ did not find Plaintiff's IQ score to be a severe impairment at step two, she explicitly considered the IQ score at steps three and four of the sequential evaluation and, therefore, any error in step two was harmless and Plaintiff did not suffer prejudice. *Rivera*,

---

[5] Listing 12.05 provides that intellectual disorders are "characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(a).

2013 WL 4507081, at *7 (finding harmless error where the ALJ considered plaintiff's non-severe mental impairment at subsequent steps of the sequential evaluation). Accordingly, the ALJ properly evaluated Plaintiff's IQ score after determining it was a non-severe impairment.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is directed to CLOSE this case.

Date: 28 September 2018

A. David Copperthite
United States Magistrate Judge